1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARETE POWER, INC.,                          No. C 07-5167 WDB

             Plaintiff,            ORDER GRANTING DEFENDANT'S
                                        MOTION TO TRANSFER VENUE

    v.

BEACON POWER
CORPORATION,

             Defendant.
_____/

      Now before the Court is the motion of Defendant Beacon Power Corporation to transfer this action to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. section 1404.  On February 6, 2008, the Court held a hearing on the motion to transfer.  Michael Collins, Esq., and Michael Dergosits, Esq., appeared on behalf of Plaintiff Arete Power, Inc.; Steven Cowley, Esq., David Conlin, Esq. and Neil Smith, Esq., appeared on behalf of Defendant. Having considered the papers, the relevant legal authority, and the arguments of counsel, the Court GRANTS the motion for the reasons discussed below.

## FACTUAL BACKGROUND

      Plaintiff Arete Power, Inc. ("Arete") alleges that it is "a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at [Reno, Nevada]."  Compl. ¶ 1.  Arete further alleges, on information and belief, that Defendant Beacon Power ("Beacon") is "a Delaware corporation with its principal place of business at [Wilmington, Massachusetts]."  Compl. ¶ 2.  Beacon's registered

1  agent for service of process is The Corporation Trust Company in Wilmington,

2  Delaware.  *Id.*   Neither party has a place of business in the Northern District of

3  California.

4      Arete alleges that it is the owner of United States Patent No. 6,710,489 (the

5  "'489 Patent"), issued on March 23, 2004, which pertains to flywheel energy storage

6  systems ("FESS's") that employ mechanical rolling element bearings for radial

7  support of a vertical axis flywheel, and magnetic bearings to carry the flywheel weight

8  axially.  Compl. ¶¶ 5-7.  Arete alleges that Beacon manufactures and sells products

9  that infringe the '489 patent, including the BHE-6, Smart Energy 25 flywheel energy

10  storage systems, and Smart Energy Matrix multi-flywheel energy storage system (the

11  "Accused Products").  Compl. ¶ 8.

12      Beacon contends that in September 1998, Beacon began shipping FESS units to

13  various locations for use in the telecommunications industry (the "TelCom Units").

14  Beacon asserts that it shipped all of these TelCom Units before the '489 Patent issued,

15  and that the technology in the Accused Products was embodied in these TelCom Units

16  before the application for the '489 Patent was filed.  Hockney Decl. ¶ 5.

17      In opposition to the motion to transfer, Arete asserts that Beacon shipped a

18  system incorporating an array of infringing FESS's to San Ramon, California, for use

19  in a frequency regulation demonstration project for the California Energy Commission

20  ("CEC").  Gabrys Decl. ¶¶ 11, 12.  *See* Def's Notice of Errata (Docket No. 42)

21  correcting reference to CEC as Commission for Environmental Cooperation.  Arete

22  Power also contends that Beacon shipped a similar system of infringing FESS's to

23  Amsterdam, New York, sometime after the shipment to San Ramon.  Gabrys Decl.  ¶¶

24  13, 14.

25      Beacon acknowledges that in September 2005, it shipped to the CEC in San

26  Ramon a system using an array of Accused Products (the "CEC Array") to

27  demonstrate the system's use in frequency regulation.  Hockney Decl. ¶ 6.  The CEC

28

1  Array was shut down on December 22, 2006, and returned to Beacon on May 10,

2  2007. *Id.*

3        In March 2006, Beacon shipped a similar system using an array of Accused

4  Products for demonstrating frequency regulation to the New York State Energy

5  Research and Development Authority in Amsterdam, New York (the "NYSERDA

6  Array"). The NYSERDA Array was shut down on March 6, 2007. *Id.* ¶ 7.

7

8                              **DISCUSSION**

9  **I.    LEGAL STANDARD**

10       Beacon seeks a transfer of venue pursuant to 28 U.S.C. § 1404. Section

11  1404(a) provides as follows:

12       For the convenience of parties and witnesses, in the interest of justice,
         a district court may transfer any civil action to any other district or
13       division where it might have been brought.

14  28 U.S.C. § 1404(a). As the moving party, Beacon has the burden to establish by

15  particular circumstances that the action should be transferred to the proposed

16  transferee district. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270,

17  279 (9th Cir. 1979). A motion to transfer venue is committed to the discretion of the

18  trial court, which must weigh several case-specific factors affecting convenience and

19  fairness. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A motion to transfer

20  venue should be denied where the transfer would merely shift an equivalent

21  inconvenience from one party to another. *Decker Coal Co. v. Commonwealth Edison

22  Co.*, 805 F.2d 834, 843 (9th Cir. 1985).

23       On a motion to transfer venue, the Court must first determine whether the

24  action "might have been brought" in the proposed transferee district. 28 U.S.C. §

25  1404(a). The proposed transferee court must have subject matter jurisdiction and

26  proper venue, and the defendant must be amenable to service of process issued by that

27  court. *See Cambridge Filter Corp. v. Internat'l Filter Co., Inc.*, 548 F.Supp. 1308,

28

1   1310 (D.Nev. 1982).  *See also* Schwarzer, et al., *Rutter Group Practice Guide:*

2   *Federal Civil Proc. Before Trial* ¶ 4:713 (2007).

3        Second, the Court must determine whether transfer would allow the case to

4   proceed more conveniently and better serve the interests of justice.  *Los Angeles*

5   *Memorial Coliseum Commission v. National Football League*, 89 F.R.D. 497, 499

6   (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984).

7        The Federal Circuit applies the law of the appropriate regional circuit governing

8   a motion to transfer.  *Storage Technology Corp. v. Cisco Systems, Inc.*, 329 F.3d 823,

9   836 (Fed. Cir. 2003).  In *Los Angeles Memorial Coliseum Commission*, the Central

10  District of California summarized the statutory factors set forth in § 1404(a), as well

11  as considerations under the doctrine of *forum non conveniens*:

12        In ruling on a transfer motion, a district court must consider each
         of the issues listed in section 1404(a): (1) the convenience of
13       parties; (2) the convenience of witnesses; and (3) the interests of
         justice.  *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir.
14       1969).  Moreover, since section 1404(a) was "designed as an
         attempt to statutorily embody and modify the doctrine of forum
15       non conveniens," *A.J. Industries, Inc. v. United States District*
         *Court*, 503 F.2d 384, 386 (9th Cir. 1974), the factors weighed by
16       courts under the old common law doctrine of forum non
         conveniens should also be considered. This remains true even
17       though the court's discretion under section 1404(a) is broader
         than it was under the doctrine of forum non conveniens.
18       *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Some of those
         factors, discussed by the Court in *Gulf Oil Corporation v.*
19       *Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055
20       (1947), are as follows:

21            the relative ease of access to sources of proof;
22            availability of compulsory process for attendance of
              unwilling, and the cost of obtaining attendance of
23            willing, witnesses; possibility of view of premises, if
              view would be appropriate to the action; and all
24            other practical problems that make trial of a case
              easy, expeditious and inexpensive....[The Court will
25            weigh] relative advantages and obstacles to fair trial.
26
27  *Los Angeles Memorial Coliseum Commission*, 89 F.R.D. at 499.  *See also Decker*

28  *Coal*, 805 F.2d at 843 (reasoning that although § 1404(a) partially displaces the

4

1 common law doctrine of *forum non conveniens,* factors affecting the convenience of

2 the forum are helpful in deciding a § 1404 transfer motion).  Because section 1404(a)

3 contemplates transfer rather than dismissal, transfer is available "upon a lesser

4 showing of inconvenience" than required for a non-statutory *forum non conveniens*

5 dismissal, giving the Court broader discretion in deciding a section 1404(a) motion to

6 transfer.  *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 50-51 (D.D.C. 2000), *pet. for*

7 *writ of mandamus denied*, 243 F.3d 557, 2000 WL 1229009 (Fed. Cir. 2000).

8      The Ninth Circuit instructs that on a motion to transfer, the district court also

9 should weigh any relevant public policy in either the forum or the transferee state, as

10 well as other "'public interest factors of systemic integrity and fairness.'"  *Jones v.*

11 *GNC Franchising, Inc.*, 211 F.3d 495, 499 n.21 (9th Cir. 2000) (citing *Stewart Org.*,

12 487 U.S. at 30).  In an earlier opinion, the Ninth Circuit recognized other public

13 factors that could be weighed in determining a transfer motion: "'the administrative

14 difficulties flowing from court congestion; the local interest in having localized

15 controversies decided at home; the interest in having the trial of a diversity case in a

16 forum that is at home with the law that must govern the action; the avoidance of

17 unnecessary problems in conflict of laws, or in the application of foreign law; and the

18 unfairness of burdening citizens in an unrelated forum with jury duty.'"  *Decker Coal*,

19 805 F.2d at 843 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)

20 (internal quotation marks omitted)).

21

22 **II.   Venue Proper in Transferee District**

23      The parties do not dispute that this patent infringement action "might have been

24 brought" in the District of Massachusetts.  The venue statute for patent cases provides

25 as follows:

26      Any civil action for patent infringement may be brought in the
       judicial district where the defendant resides, or where the
27     defendant has committed acts of infringement and has a regular
       and established place of business.

28

1  28 U.S.C. § 1400(b).  The Federal Circuit has held that the general venue statutes

2  extend venue in a patent infringement case to include any district where there would

3  be personal jurisdiction over the corporate defendant at the time the action is

4  commenced.  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583

5  (Fed. Cir.1990) (applying 28 U.S.C. § 1391(c) as amended in 1988).  It is undisputed

6  that Beacon's principal place of business is in the District of Massachusetts, and that

7  venue in that district would be proper.

8

## III.   Application of Convenience Factors

### A.     The Plaintiff's Choice of Forum

11          In the weighing of convenience factors, when the forum plaintiff has chosen is

12  also the plaintiff's residence, plaintiff's choice is given considerable weight and will

13  not be disturbed unless other factors weigh substantially in favor of transfer.  *Royal*

14  *Queentex Enterprises v. Sara-Lee Corp.*, 2000 WL 246599 at *3 (N.D. Cal. 2000)

15  (citing *Decker Coal*, 805 F.2d at 843, which requires a "strong showing of

16  inconvenience to warrant upsetting the plaintiff's choice of forum"); *Los Angeles*

17  *Memorial Coliseum Comm'n*, 89 F.R.D. at 499.  *See also Reiffen*, 104 F.Supp.2d at

18  52.  Plaintiff's choice of forum is entitled to appreciably less weight, however, when

19  plaintiff does not reside there, or where the forum chosen lacks a significant

20  connection to the activities alleged in the complaint.  *See Piper Aircraft*, 454 U.S. 235,

21  255-56 (1981) ("Because the central purpose of any *forum non conveniens* inquiry is

22  to ensure that the trial is convenient, a foreign plaintiff's choice deserves less

23  deference."); *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954-55 (9th Cir.

24  1968); *Fabus Corp. v. Asiana Express Corp.*, 2001 U.S.Dist LEXIS 2568 at *4, 2001

25  WL 253185 at *1 (N.D.Cal. March 5, 2001).

26  //

27  //

28

### 1. Nonresident

Arete admits that it does not have a place of business in the Northern District of California. Opp. at 1. Arete is not incorporated in California, but in Nevada, and its principal place of business is in Reno, Nevada. As this Court is not Arete's home forum, the degree of deference to Arete's choice of venue is reduced. *See Piper Aircraft*, 454 U.S. at 255-56.

Arete stated during oral argument that it did not file its complaint in its home forum, the District of Nevada, because it was not clear that there was a sufficient basis for that court to exercise personal jurisdiction over Beacon. On this record, we cannot find that Arete's choice of this Court was primarily a product of forum shopping. Rather, it appears that Arete chose this forum because it is relatively close to its principal place of business and is well served by means of transportation. Given these circumstances, we decline to strip plaintiff's choice of forum of any deference at all.

### 2. Connection with Forum

Under Ninth Circuit law, Arete's choice of venue is entitled to less deference if this district does not have a significant connection with the cause of action. *Pacific Car*, 403 F.2d at 954. Arete contends that its choice of forum should be entitled to deference because "many if not most of the operative facts giving rise to Arete's claim of patent infringement occurred in the Northern District of California." Opp. at 5-6. Arete apparently bases this contention on the fact that Beacon installed an accused product in San Ramon, California, and operated it there for some sixteen months.

In reply, Beacon acknowledges that it had some contacts with California by shipping and operating the CEC Array to San Ramon, but contends that it was only shipped for demonstration purposes and was not sold to the CEC. 2d Hockney Decl. ¶ 5. The FESS units were vacuum-sealed in steel containers before they were shipped from Massachusetts, and remained sealed in California. *Id.* ¶ 4. The CEC Array was operated in San Ramon from about September 2005 to December 2006, and has since

been returned to Beacon. Hockney Decl. ¶ 6. This was about the extent of use of the Accused Products in Amsterdam, New York, where Beacon demonstrated the potential value of its Array for the NYSERDA from March 2006 to March 2007. *Id.* ¶ 7.

Arete counters by contending that one of the only two alleged infringing uses of the Accused Products occurred in California, and that the shipment of the CEC Array to San Ramon is the earlier known act of patent infringement, and gives rise to Arete's infringement claim.

Arete certainly has established that there is a connection between this forum and allegedly infringing activity by Beacon. But that fact misses the primary point of our inquiry at this juncture. The law asks us, here, to identify the principal location of the legally operative facts – and in patent cases that location generally is where the allegedly infringing product was designed, developed and produced. *See Neil Bros. Limited v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 327-28 (E.D.N.Y. 2006). This makes sense because in determining whether infringement has been established, the principal target of inquiry is the design and construction of the accused product. The trier of fact will be asked to compare the claims in the patent with the accused product – examining its development, its components, its construction, and how it functions. All of these issues will be best addressed through evidence that is in Massachusetts – where witnesses, documents, and the accused products themselves will be used to explore the purposes for which and the manner in which the products were designed and manufactured. Significantly, the accused products are sizeable – and the only place any exemplars are now located is Massachusetts (Beacon's home). So Massachusetts is, by far, the best place for examining their evolution, construction and operation with the requisite detail and reliability.

Moreover, the central issues in this case are not how extensively the accused products were marketed, or how well they operated in the field, or how deeply they penetrated any market, or how much economic harm they caused plaintiff to suffer.

Apparently Beacon has never sold an accused product – and has been able to demonstrate its operation only to two entities.  The litigation of this dispute will revolve around two issues: (1) as a matter of design and construction, does the accused product infringe, and (2) was Arete's '489 patent anticipated by Beacon's design, manufacture, and marketing of products in the same field in the late 1990's.  Thus, the evidentiary and behavioral center of the case is in Massachusetts – which, therefore, is the situs of the operative facts.

It follows that while there is some connection between this litigation and California, the locus of the most legally relevant connection clearly is Massachusetts.

## B.    Convenience of the Parties

Section 1404(a) requires the Court to consider the convenience of the parties when ruling on a motion to transfer venue.  The forum to which Beacon seeks to transfer this action is its own home forum, Massachusetts, making transfer most convenient for Beacon.  Beacon asserts that the Accused Products were designed, developed and manufactured in Massachusetts, and that its business records are kept there.  Hockney Decl. ¶¶ 8, 19.  In opposition, Arete contends that litigating in Massachusetts would be a burden, in that the federal district court in Boston is over 2500 miles from Arete's Reno office, and there are no direct flights between Reno and Boston.  Gabrys Decl. ¶¶ 21, 22.  The Oakland courthouse in the Northern District of California, by contrast, is "relatively convenient" in that non-stop flights are available between Reno and Oakland and take about 50 minutes.  Gabrys Decl. ¶ 18.

Arete suggests that Oakland is much more convenient for itself and its witnesses than Boston, which is ten times farther from Reno than is Oakland.  Arete appears to say that it is willing to suffer a little inconvenience by appearing in this Court, but not the greater inconvenience of litigating in Massachusetts.  Arete offers no authority for its proposition that its choice of forum is entitled to deference when it is "relatively" the most convenient forum, but not its home forum.  The law requires

9

1    us to examine the convenience of all the parties, not just the plaintiff – and to try to

2    identify the forum where the net inconvenience (to all parties) would be least.

3         In this patent infringement case the parties' convenience will be served by

4    facilitated access to the witnesses and documents that disclose the history of Beacon's

5    relevant products and the design and development of the devices that plaintiff accuses

6    of infringement.  *See B&B Hardware, Inc. v. Hargis Ind.*, 2006 WL 4568798 at *4

7    (C.D.Cal. Nov. 30, 2006) (transferring trademark dispute to E.D. Ark.); *Neil Bros.*,

8    425 F.Supp.2d at 331 (transferring patent infringement action to W.D. Tenn.).

9         Arete's documents are located in Reno, which is much closer to Oakland than to

10   Boston.  But the relevant Arete documents are limited and readily transportable

11   (consisting primarily of the patent file and the patent itself).  Moreover, Arete must

12   transfer its documents from its principal place of business whether this action is

13   litigated here or in the District of Massachusetts.  Beacon, on the other hand, would be

14   spared the inconvenience of having to ship its much more voluminous documents

15   from Massachusetts to California if the action were transferred to the District Court in

16   Boston.

17        In addition to documentary evidence about the Accused Products, Beacon

18   points out that testing equipment and the Accused Products themselves are in

19   Massachusetts, making access to the FESS's more convenient for both parties (as well

20   as the witnesses, jurors and judge) if physical inspection is necessary.  Mot. at 14-15

21   and n.3.  Beacon has presented evidence that the FESS units are vacuum-sealed in

22   thick steel containers that appear to be large and bulky and presumably would be

23   difficult to transfer to another location.  2d Hockney Decl. ¶ 4 and Fig. 1.

24        We conclude that transferring this action to the District of Massachusetts would

25   not simply shift an equivalent inconvenience from Beacon to Arete – in part because

26   Arete already bears some inconvenience by appearing in this Court.  Arete has no

27   place of business in California; its employees would be required to travel for trial and

28   its records would have to be shipped out of state.  Transferring this action to

Massachusetts would increase Arete's inconvenience – but not massively, whereas that transfer would reduce dramatically the inconvenience that litigating this case would impose on Beacon.

Thus, on balance, the convenience to the parties favors transfer to the District of Massachusetts.

### C.     Convenience of Witnesses

The convenience of the witnesses is often the most important factor considered by the Court in ruling on a motion to transfer. *Steelcase, Inc. v. Haworth, Inc.*, 41 U.S.P.Q.2d 1468, 1470 (C.D. Cal. 1996) (granting motion to transfer patent action to W.D. Mich.).  "To demonstrate inconvenience, the movant should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action. . . . The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Id.* In balancing the convenience of the witnesses, courts attend with special care to the burdens that would be placed on any non-party witnesses. *Royal Queentex*, 2000 WL 246599 at *6.

Among the most significant witnesses on the infringement and anticipation issues are the inventor(s) and the design and testing engineers. *See Steelcase*, 41 U.S.P.Q.2d at 1470.  Important witnesses on the issue of damages include potential and actual customers and expert witnesses. *Id.  See also MTS Sys. Corp. v. Hysitron, Inc.*, 2006 WL 2547698 at *2 (N.D. Cal. Sept. 1, 2006) (granting motion to transfer venue).

### 1.     Arete's Witnesses

Chief among Arete's witnesses is Dr. Christopher Gabrys, President and Chief Executive Officer of Arete.  He is the sole named inventor of the patent in suit.

1   Gabrys Decl. ¶ 6.  He currently resides in Reno, Nevada, where Arete has its principal

2   place of business.  *Id*. ¶ 4.  Dr. Gabrys points out that Reno is 222 miles, or 3 ½ hours

3   by automobile, from the Oakland courthouse, compared to 2500 miles to Boston;

4   furthermore, he notes that relatively short non-stop flights from Reno to Oakland are

5   available, but there are no direct flights between Reno and Boston.  *Id.* ¶¶ 16-22.  Dr.

6   Gabrys therefore contends that it would be "relatively convenient for me to attend

7   hearings and trial in Oakland."  *Id.* ¶ 19.

8        Another Arete officer, Timothy Rodgers, who is the Secretary-Treasurer and

9   Chief Operating Officer, lives in Santa Barbara, California, which is about 330 miles,

10  or a 5 ½-hour drive, from Oakland, compared to 2500 miles from Boston. *See* Gabrys

11  Decl. ¶¶ 25-30.  A non-stop flight between Santa Barbara and Oakland takes about

12  one hour and ten minutes, whereas there are no non-stop flights between Santa

13  Barbara and Boston.  *Id.*  Mr. Rodgers has informed Arete that "it would be relatively

14  convenient for him to attend trial in Oakland."  *Id.*

15       Arete expects to call a third witness, J. Michael Neary, the attorney who

16  prosecuted the patent-in-suit.  Mr. Neary resides in LaPine, Oregon, which is about

17  456 miles from Oakland, or a 7 ½ hour drive.  *See* Gabrys Decl. ¶¶ 31-36.  Non-stop

18  flights between Eugene, Oregon, and San Francisco are available, but not between

19  Eugene and Boston.  *Id.*  Mr. Neary has informed Arete that "he would likely be

20  available to testify at trial in Oakland but not in Boston."  *Id.* ¶ 36.  In assessing Mr.

21  Neary's situation, however, we also may take into account the fact that he has a

22  minority ownership interest in Arete, an interest that might increase his motivation to

23  appear voluntarily at a trial in Boston.

24       In sum, while Arete's witnesses would have to travel regardless of where this

25  case is tried, their travel burdens would be less if the case remained here.

26  //

27  //

28

## 2.      Beacon's Witnesses

Beacon has identified eight potential witnesses who reside in the District of Massachusetts, including former and current engineers and sales and marketing personnel whose testimony might well play important roles in Beacon's invalidity and non-infringement defenses.

Beacon has identified four engineering witnesses who can provide testimony about how the accused products were developed.  Among them, Richard Hockney and James Arseneaux are current Beacon employees residing in Massachusetts.  Hockney is Beacon's Chief Engineer and is the lead inventor on U.S. Patent No. 6,262,505, which was cited as prior art to the '489 Patent.  Hockney Decl. ¶ 13.  Arseneaux was the project manager for the installations of the CEC and NYSERDA Arrays and is familiar with the use of the Accused Products in those Arrays.  Hockney Decl. ¶ 14.

Beacon also expects testimony from two of its former engineers: Norman Brackett, who resides in Massachusetts, and Omar Kabir, who apparently resides in New York.  2d Hockney Decl. ¶ 8.  Hockney, Brackett and Kabir are expected to testify about the design, development, function and operation of Beacon's Accused Products.  Kabir and Brackett are familiar with the state of the art of dampening systems at the time the application for the patent-in-suit was filed.  They also would offer testimony about how the technology in the Accused Products was embodied in the products that Beacon was producing before Arete's patent application was filed.  Mot. at 6-7.

Beacon also expects to call Mark Manganelli, a current Beacon employee who resides in Massachusetts and who is familiar with the accounting for the CEC Array and NYSERDA Array.

In addition, Beacon has identified four former and current employees whose testimony would be offered to describe meetings between Beacon and Dr. Gabrys, Arete's President, during which Dr. Gabrys allegedly acquired information about Beacon's TelCom Units (the alleged prior art) before the '489 Patent application was

13

1    filed.  Hockney Decl. ¶ 15.  Of these witnesses, only Ward Spears is a current Beacon

2    employee; he resides in Massachusetts.  Michael Favaloro, a former Beacon

3    employee, also resides in Massachusetts.  Two other former Beacon employees live

4    outside Massachusetts: Sharad Moghe is believed to reside in Ohio, and David

5    Hezzell is believed to reside in California.  *Id.*

6        Beacon has identified two witnesses, both of whom live in Massachusetts, who

7    would offer testimony about Beacon's marketing.  Harvey Wilkinson is a former

8    Beacon employee who is expected to testify about the marketing of Beacon's TelCom

9    Units.  Hockney Decl. ¶ 16.  Matthew Lazarewicz is a current Beacon employee who

10   is expected to testify about efforts to market the CEC and NYSERDA Arrays.

11   Hockney Decl. ¶ 17.

12       While there likely would be some overlap among the subjects covered by the

13   witnesses Beacon has identified, we have no basis for a finding that Beacon has

14   padded or manipulated its list in order to exaggerate the inconvenience that litigating

15   this case in this forum would impose.  Each of the proffered witnesses will offer

16   presumptively relevant information – and many would appear to be sources of

17   evidence that is likely to play a significant role in determining the outcome of the two

18   major issues in this litigation (infringement and invalidity).  Looking primarily to the

19   convenience of the six non-party witnesses identified by Beacon, three of them

20   (Brackett, Wilkinson, and Favaloro) are Massachusetts residents.  Beacon represents

21   that Brackett and Wilkinson have indicated that they would be available for only

22   limited times due to work obligations and travel demands if the action were litigated

23   in California.  Hockney Decl. ¶ 18.

24       The other non-party witnesses identified by Beacon are Kabir, a New York

25   resident, Moghe, a resident of Ohio, and Hezzell, a resident of California.  This district

26   is presumably more convenient for Hezzell, but it is quite likely that Massachusetts is

27   more convenient for Kabir and Moghe.

28

14

All five of Beacon's employee witnesses, Hockney, Arseneaux, Manganelli, Spears, and Lazarewicz, reside in Massachusetts.  With a total of eight witnesses residing in Massachusetts, the balance tips heavily in favor of transfer.

Arete contends that traveling to Massachusetts would be extremely inconvenient for its witnesses, who would prefer to litigate on the West Coast.  But as Arete's witnesses do not reside in this district, they would be inconvenienced by travel regardless of where the case is tried.  *See Royal Queentex,* 2000 WL 246599 at *7.  As it now stands, all of Arete's witnesses would be required to travel to the Northern District of California, as none of them reside here.  While transferring this action to the District of Massachusetts would increase the travel inconvenience to Arete's witnesses, that transfer would decrease, by much greater margins, the travel inconvenience for the larger number of Beacon witnesses.

We conclude that the substantial net increase in convenience for parties and witnesses that would result from transferring this litigation to Massachusetts clearly outweighs the modest presumption in favor of Arete's choice of venue.

## IV.   Interest of Justice

Section 1404(a) also requires us to consider how the "interest of justice" would be affected by transferring this case to Massachusetts or declining to order that transfer.  Factors that may be relevant to this inquiry include (1) the relative ability of each of the two courts to compel attendance of witnesses, (2) the relative ability of the two courts to provide direct access by witnesses and jurors to tangible evidence or to pertinent premises, (3) promoting consistency among court rulings that affect the development and trial of this case, (4) reducing the aggregate transaction costs imposed by the litigation on the parties, (5) providing the most expeditious access to judicial resources and a trial date, (6) assessing the relative intensity in the two jurisdictions of any local interests that the litigation might implicate, and (7) the

1    relative levels of familiarity of the judges in the two courts with the substantive law

2    they would be called upon to construe and apply in this case.

3

4         **A.    Attendance of Witnesses**

5         The availability of compulsory process to compel the attendance of unwilling

6    witnesses is an important factor.[1] *See Cambridge Filter Corp.,* 548 F.Supp. at 1311

7    (granting motion to transfer to N.D. Cal.).

8         If this litigation proceeds in this Court, five of the non-party witnesses that

9    Beacon has identified would be beyond the range of compulsory process, whereas

10   only one of Arete's non-party witnesses could not be subpoenaed.  And Arete has

11   suggested that it identified that witness (David Campbell, a former employee who

12   lives in Maryland) only out of an abundance of caution – not because he is expected to

13   be the source of significant evidence.

14        Viewing the matter from a different perspective, we note that if the litigation

15   proceeds in this court there is only one non-party witness, Mr. Hezell, who would be

16   within range of compulsory process.  Moreover, it is not at all clear that Mr. Hezell's

17   testimony is likely to contribute significantly to the just resolution of any important

18   issue in this case.  A former Beacon employee, he apparently could provide evidence

19   about meetings between Beacon officials and Dr. Gabrys (the named inventor on

20   plaintiff's patent) that occurred before Arete submitted the application that led to the

21   issuance of the '489 patent.  It appears, however, that there are at least two other

22   witnesses who have testimony to offer on that same subject – both of whom reside in

23   Massachusetts and one of whom, no longer being employed by Beacon, might well

24   decline to testify in California voluntarily.

25

26        [1]     Beacon erroneously assumes that this Court's subpoena power could reach only those
     non-party witnesses who reside within 100 miles.  Mot. at 14.  This Court's subpoena power extends
27   throughout the state of California pursuant to Fed.R.Civ.Proc. 45(b)(2)(C), which provides that a
     subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide
28   service of a subpoena issued by a state court of general jurisdiction.  Section 1989 of the California
     Code of Civil Procedure authorizes such state-wide service.

In contrast, if this litigation proceeds in Massachusetts, several non-party witnesses will be within subpoena range – and several others who are outside that range will be much closer to the site of the trial than they would be if it were proceeding in California, so they might be less resistant to appearing in Massachusetts voluntarily.

In sum, the respective courts' ability to compel witness attendance favors transfer to the District of Massachusetts.

In some cases, it is important, as an additional aspect of the analysis of the "interest of justice," to compare (in the two candidate courts) ease of access to premises or to immovable physical evidence. In the case at bar, there likely would not be a need for jurors or witnesses to inspect or view any particular premises or piece of real property, but being able to examine the Accused Products, or to see the process by which they are made, might advance the interest of justice. As we have pointed out, the specific products that Arete accuses in this lawsuit are encased in large, apparently heavy, sealed metal casings. These casings would be difficult to move to California from Massachusetts. It would be much easier to view them, and the plant at which the accused products were developed and manufactured, if the case were venued in Massachusetts. Because it would be much easier and cheaper to arrange for such inspections and viewing in Massachusetts than it would be here, it is more likely that these sources of potentially useful information and evidence would be made available to witnesses and triers of fact if the case were transferred.

### B.      Consistency in Court Rulings

As a general proposition, the interest of justice is advanced to the extent that one court (rather than two or more) is the source of the rulings and judicial guidance that are provided in any one case. Concentrating responsibility for rulings and guidance in one court reduces both inefficiencies (eliminating the need for judges in

other courts to become familiar with the case and the pertinent law) and the risk that the parties or witnesses will be subject to inconsistent directives.

In the case at bar, several non-party depositions are likely to be taken, and some non-party subpoenas are likely to be served, in the District of Massachusetts.  None are likely to be taken or served in the Northern District of California.  If disputes arise during such depositions, or as a result of subpoenas issued to non-party witnesses or entities, the Court to which the parties must turn for rulings is the District of Massachusetts.  *See, e.g.*, Fed.R.Civ.P. 45(c)(2)(B).  Permitting this case to proceed in the Northern District of California thus creates a substantial risk that two different courts would  be called upon to learn the case and to issue rulings that affect the scope and timing of discovery.

If this litigation is venued in Massachusetts there will be appreciably less risk that multiple courts will be required to address discovery disputes.  Most of the significant discovery is likely to take place in Massachusetts, where at least eight of the likely witnesses reside.  Little discovery of moment, if any, is likely to take place in the Northern District of California.  Moreover, if the case is venued in the District of Massachusetts, counsel can elect to take to that court even disputes that arise in depositions being taken in other states if the deponent is a party or is legally aligned with or controlled by a party (e.g., is a current employee at a certain level).  Fed.R.Civ.Proc. 30(d)(3).  Thus, only if the case is venued in Massachusetts is there a substantial likelihood that all pretrial rulings and guidance would emanate from a unitary judicial source.  The significance of this factor grows with the subtlety and complexity of the case and the evidentiary issues it is likely to generate – and this is a patent case at whose center are some extremely sophisticated scientific processes and products.

//

## C.   Aggregate Transaction Costs

While it may not be conventional to do so, we think that an analysis of the "interest of justice" should include some consideration of the transaction costs that are likely to be generated by the litigation.  As the expense of litigating has increased in this country (at a pace that far exceeds the rate of inflation), rising litigation transaction costs have posed an ever greater threat to the "interest of justice." Foreseeable transaction costs dissuade some people who have legally cognizable claims or viable defenses from using the court system at all (plaintiffs who never file; defendants who default rather than contest claims).  And for those who try to use the court system, transaction costs often become sources of decision-distorting pressures or outright abandonment of rights.   Our concern about the health and the accessability of the system of civil justice compels us to take into account the implications of venue selection for transaction costs.  If the total cost (to all parties) of litigating a case is likely to be appreciably less in one venue than in another, we have a duty to consider this factor when trying to identify the venue in which litigating the case would advance most the "interest of justice."[2]

Arete contends that trying this case in Massachusetts will cost more because of the greater travel distance from Reno.  This argument does not account for the fact that Arete will likely be required (by applicable law) to conduct most of the discovery in Massachusetts anyway, in light of the fact that most of the witnesses reside there. As we have noted, none of the parties and none of the witnesses reside in the Northern District of California.  Moreover, it appears that most of the significant non-party

---

[2]   When we address "total transaction costs" to the litigants in this setting we are not merely re-hashing our assessment of the relative expense burdens that we considered when we reviewed the "convenience of parties."   When assessing the parties' convenience, we are primarily interested in determining, for each separately considered venue, whether proceeding there would be appreciably more expensive for one party than for the other.  By contrast, when we examine the expense burden in this section we are trying to determine whether the total net cost of the litigation would be appreciably greater in one of the proposed venues than in the other(s).  So in this part of our analysis we are trying to aggregate the total economic burden, direct and indirect, that the litigation is likely to impose on all parties – and to determine whether it appears that that aggregate burden would be substantially greater in one of the proposed venues than in the other(s).

witnesses reside either in Massachusetts or in states that are much closer to
Massachusetts than to California (New York, Ohio, and Maryland).  Thus, if the trial
were conducted here in Oakland, many more witnesses would be required to travel
much greater distances than if it is tried in Boston.

Furthermore, for many years Beacon has made products in Massachusetts that it
contends are central to its "anticipation" and "obviousness" defenses.  Exemplars of
these products (as well as of those that Arete has directly accused), and the
documentary evidence about their design and development, all are located in the
Boston area.  By contrast, Arete apparently has no products that are available for
inspection or demonstration, and it would be required to copy and transport its
documentary evidence somewhere (here or Boston) regardless of where the litigation
proceeds.

Taking all these circumstances into account, it seems likely that the net
(aggregate) cost of fairly litigating this case would be appreciably lower if it were
venued in Boston than if it were venued here.

### D.   Other Considerations

The Court may consider relative court congestion on a motion to transfer, but
this factor usually is not a major consideration.  *Royal Queentex*, 2000 WL 246599 at
*8.  Moreover, it is not clear that there is any material difference in "congestion"
between the two candidate courts.  Statistics published by the Administrative Office of
the United States Courts for 2006 show that weighted filings (civil and criminal) per
judgeship were much higher in the Northern District of California (621) than in the
District of Massachusetts (306), but those same statistics also show that the median
times from filing to disposition and from filing to trial were longer in the
Massachusetts federal court (9 months and 28 months, respectively) than they were in
the Northern District of California (7.4 months and 25.0 months, respectively).  *2006*
*Federal Court Management Statistics* 38, 127 (Administrative Office of the United

States Courts 2007).  While these figures could be interpreted to suggest that cases are processed with greater efficiency in this district than in Massachusetts, they also could support an inference that litigants could have access to more judicial resources and prompter judicial attention (on a per case basis) in Boston than in Northern California.

Arete also contends that the litigation is likely to be more streamlined here than in Boston because this court has adopted specialized local rules that govern the pretrial development of patent cases.  It is judicially noticeable, however, that Massachusetts is the locus of considerable high-tech innovation and business activity, as well as of the kind of litigation that accompanies such activity.  Thus, it is reasonable to assume that judges in the federal court in Boston are likely to have had considerable exposure to patent litigation.  We certainly cannot presume that simply because we have promulgated a set of procedural rules that presumptively apply to patent cases that our judges will manage such cases with greater sophistication or efficiency than the judges of the District of Massachusetts.  The fact that judges in the District of Massachusetts appear to have more time per case than we do might increase the likelihood that they would be able to tailor case development plans that are more sensitive to the specific circumstances of each litigated matter.

Nor is there any basis for assuming that the judges of this court would be more familiar with the substantive legal norms that will apply in this case than the judges who sit in the District of Massachusetts.  The claims and defenses that the parties will litigate are governed exclusively by federal patent law; substantive local law will play no significant role.  Federal judges sitting in comparably situated courts are presumed to be comparably familiar with federal law.

This case has not been pending long enough for any judge of this court to have invested significant time in learning about the facts and circumstances out of which it arises.  It follows that transfer would not cause a duplication of learning by a judge in Boston.

1    Nor do the parties have pending here any motions or other pretrial problems

2  whose disposition or resolution would be delayed by the proposed transfer.  *Cf. Allen*

3  *v. Scribner*, 812 F.2d 426, 436 (9th Cir.), *amended by* 828 F.2d 1445 (9th Cir. 1987)

4  (3½ year pendency of litigation counseled against change of venue).

5    The authorities suggest that when weighing the competing interests in a setting

6  like this we also may ask whether California or Massachusetts has any specific

7  interests or applicable public policies that this litigation would implicate and that

8  would elevate either state's concern about the issues presented by this lawsuit or its

9  outcome.  *Decker Coal*, 805 F.2d at 843.  Arete has neither alleged state law claims

10  nor identified any California public policy for which this case could have significant

11  implications.  *Cf. Jones*, 211 F.3d at 498-99.  Arete is not a resident of California – so

12  this litigation would not even implicate a generalized interest that California would

13  have in protecting, promoting, or disciplining local businesses.  Beacon, on the other

14  hand, is a resident of Massachusetts – so Massachusetts presumably has some interest

15  in how Beacon behaves and its fate as an employer and taxpayer.  But this interest is

16  so general and so obliquely implicated by this litigation that this factor deserves little

17  weight in our analysis.

18

19  **V.    Balance of Factors**

20    When we review all of the pertinent factors, and focus on those that are most

21  analytically significant, we conclude that the balance tips sharply in favor of

22  transferring this case to the District of Massachusetts.  As we have indicated, this is

23  not a situation in which moving the case to the other candidate court simply would re-

24  locate an equivalent burden from plaintiff to defendant.  The burden that would be

25  imposed on Beacon by keeping the case here would be much greater than the burden

26  that would be imposed on Arete by moving it to Boston.  The center of evidentiary

27  gravity in this matter clearly is in the Boston area – where there are more witnesses,

28  more documents, more relevant products and the only relevant premises.  While

Oakland is closer to Arete's headquarters than Boston, neither Arete nor any of its witnesses reside here.  None of Arete's documents are here.  It has no products to display or premises that might need to be inspected.  Moreover, there will be appreciably less risk of skewed or incomplete development or presentation of the evidence if the case is litigated in Massachusetts – because more of the important witnesses reside there and are within the subpoena range of that District Court and because the accused devices and the allegedly 'anticipating' products are readily accessible there.  Litigating the case in the District Court of Massachusetts also reduces the risk that this litigation will needlessly consume extra judicial resources or that inconsistent judicial rulings or guidance will compromise the development of the evidence or the management of the pretrial process.

## CONCLUSION

For the reasons detailed above, we HOLD that the convenience of the parties and the witnesses and the interest of justice would be served best by transferring this action to the District of Massachusetts.  Therefore, pursuant to 28 U.S.C. § 1404(a), we GRANT Beacon's motion and ORDER THE TRANSFER OF THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS.  The Clerk shall transfer the file.

**IT IS SO ORDERED.**

Dated:  February 22, 2008

_____
WAYNE D. BRAZIL
United States Magistrate Judge